## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIM PURCELL, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE PENNSYLVANIA DEPARTMENT OF | ) |
| CORRECTIONS, JEFFREY A. BEARD, | ) Civil Action No. 00-181J |
| individually and in his official capacity as | ) Judge Kim R. Gibson |
| DOC Secretary, SUPT. FREDERICK | ) |
| ROSEMEYER, SUPT. RAYMOND J. SOBINA, | ) |
| DEPUTY SUPT. LOUIS S. FOLINO, HOWARD | ) |
| H. ROLLINS, PAUL NOEL M.D., SUSAN | ) |
| HAMMER, CAPT. NICHOLAS M. | ) |
| PONCHIONE, and B. E. ANSELL, | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Tim Purcell, a prisoner in the State Correctional Institution at Laurel Highlands,

Pennsylvania (SCI-LH), commenced this action against the following officers/employees of the

Pennsylvania Department of Corrections (DOC): Jeffrey Beard, Secretary of the DOC;

Frederick Rosemeyer, Superintendent of SCI-LH; Raymond Sobina, Superintendent of

SCI-Somerset; Louis S. Folino, Deputy Superintendent for Facilities Management (Security) at

SCI-Somerset; Joseph H. Rollins, Inmate Grievance officer at SCI-Somerset; Paul Noel, M.D.,

medical director at SCI-Somerset; Susan Hammer, registered nurse practitioner and Health Care

Administrator at SCI-Somerset; Nicholas Ponchione, captain of the guards at SCI-LH in charge

of security; and B. E. Ansell, Disciplinary Hearing Examiner at both SCI-LH and SCI-Somerset.

In his original Complaint (doc. no. 1) filed on July 10, 2000, Purcell alleged violations of

the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42

U.S.C. §§ 12101 - 12213. The Commonwealth Defendants filed a Motion to Dismiss (doc. no. 10) the original Complaint on November 9, 2000. On December 29, 2000, Purcell filed, as a matter of right, an Amended Complaint (AC) (doc. no. 15). In the AC, Purcell added a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] On January 22, 2001, the Commonwealth Defendants filed a renewed Motion to Dismiss (doc. no. 18), requesting dismissal of the AC. On May 8, 2001, Purcell filed a Motion for Leave to File a Supplemental Complaint (SC) (doc. no. 22) and a Brief in support thereof (doc. no. 23), a Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction (PI) (doc. no. 24), and a Brief in support thereof (doc. no. 25). Attached to Purcell's Motion to File a Supplemental Complaint is a two-volume complaint, entitled "Supplemental Civil Rights Complaint" and another volume of supporting exhibits.

On June 28, 2001, this Court issued a Report and Recommendation (doc no. 30) which recommended that the Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order be denied. Again, on August 16, 2001, this Court issued a Report and Recommendation (doc no. 36) which recommended that the Defendants' renewed Motion to Dismiss (doc. no. 18) be granted in part and denied in part and that the Plaintiff's Motion for Leave to File a Supplemental Complaint (doc. no. 22) be granted. On September 28, 2001, Judge D. Brooks Smith issued an Order that adopted the recommendations made in the Report and Recommendations and directed the service of the Plaintiff's SC (doc. no. 40). On June 24, 2002, the Commonwealth Defendants filed a Motion to Dismiss and/or for Summary Judgment, (doc. no. 86), and a Brief in support (doc. no. 87). On August 23, 2002, Defendant Dr. Noel filed a Motion to Dismiss, (doc. no. 99),with supporting exhibits (doc. no. 100). On August 28,

2002, Purcell filed a Brief in opposition, (Parts 1 and 2), to the Commonwealth Defendants'

Motion to Dismiss (doc. 103). On September 16, 2002, Purcell filed a Brief in Opposition to the

Motion to Dismiss filed by Defendant Noel (doc. no. 106). He also filed a Motion Seeking to

Reinstate his ADA Injunctive Relief claims due to a change in the law (doc. no. 113).

On March 10, 2003, Magistrate Judge Francis X. Caiazza recommended that the Motion

for Summary Judgment filed by the DOC be granted except for Plaintiff's RA claims; that Dr.

Noel's Motion to Dismiss be granted; and that the Plaintiff's Motion Seeking to Reinstate his

ADA Claims for Injunctive Relief be granted (doc. no. 114). Judge Joy Flowers Conti signed an

Order dated May 22, 2003, adopting the Report and Recommendation in all respects (doc. no.

126).

Purcell then filed a "Motion to Vacate Judgment and/or for Rule 54(b) Partial Judgement

Immediate Appeal Certification," (doc. no. 127) and a document entitled: "Plaintiff's Emergency

Letter Petition Requesting Reinstatement of Amended + Supplemental Complaint Rehabilitation

Act Claims Not Addressed by the Court" (doc. no. 129). Dr. Noel responded to the Plaintiff's

Motion to Vacate (doc. no. 131), as did the DOC (doc. no. 133). Then, the DOC filed a Motion

for Summary Judgment (doc. no. 134), and Brief in support (doc. no. 135). The motion was

supplemented by the DOC on July 24, 2003 (doc. no. 139). Plaintiff responded to the Motion for

Summary Judgment and also moved for partial summary judgment on his own behalf (doc. no.

142). He filed a two-part brief (doc. nos. 143, 144), an affidavit (doc. no. 145) and exhibits (doc.

no. 146), in support of the motion.

On January 26, 2004, Magistrate Judge Caiazza filed the following recommendations:

that the Plaintiff's Motion to Vacate Judgment or to Enter Final Judgment (doc. no. 127), be

denied; that the Plaintiff's Motion for "Reinstatement" of his Rehabilitation Act claims (doc. no.
129), be denied as moot; that the Defendants' Motion for Summary Judgment (doc. no. 134), be
granted in part and denied in part; that the Plaintiff's Cross-Motion for Partial Summary
Judgment (doc. no. 142), be denied; and that the Plaintiff's Motion for Default (doc. no. 150), be
denied (doc. no. 152). On March 1, 2004, this Court adopted the Report and Recommendation
by Magistrate Judge Caiazza (doc. no. 158).

Over the next three months, Plaintiff filed numerous motions and appeals. On September
23, 2004, this Court filed a Memorandum Order disposing of Plaintiff's pending motions (doc.
no. 169). On October 25, 2004, Defendants filed a Motion for Summary Judgment and Brief in
support thereof (doc. nos. 173 & 174). On November 23, 2004, Plaintiff filed a Brief in
opposition to Defendants' motion (doc. no. 178). The Motion for Summary Judgment is ripe for
disposition by this Court.

## I. Relevant Facts

Purcell has been diagnosed as having Tourette's Syndrome (TS) which has been defined
as a neurological impairment characterized by motor and verbal tics and coprolalia.[2] See Purcell
v. Pennsylvania Dep't of Corrections, No. Civ. A. 95-6720, 1998 WL 10236, at *1 (E.D. Pa. Jan.
8, 1998). In addition, he has been diagnosed with Attention Deficit Disorder (ADD), Attention
Hyperactivity Disorder (AHDD), Obsessive Compulsive Disorder (OCD) and Post Traumatic
Stress Disorder (PTSD). Also, Purcell has been diagnosed as having degenerative arthritis in his
knees and lower back, orthopedic impairments including herniated discs in his lower back, flat
feet, diabetes, gran mal epilepsy, asthma and high blood pressure. The manifestation of
symptoms associated with TS varies from time to time and increases during periods of stress.

See Doc. no. 2, Ex. A-14 at 4. Typically, an individual diagnosed with TS can control the symptoms or tics for a period of time. Control, however, sometimes causes discomfort because these symptoms have an accumulative effect, and at some point, the inflicted person must release the symptoms by "exploding", preferably in private so as to avoid embarrassment. An individual with TS cannot always control his or her symptoms, and they simply manifest themselves involuntarily and uncontrollably. Also, due to his orthopedic impairments, Plaintiff utilizes the following devices: cane, hard shell back brace, left shoulder brace, two knee braces, left thumb brace and special orthopedic boots with arch supports. AC at ¶ 15.

In his 147 page AC, the Plaintiff essentially alleges that his rights under the ADA, the Rehabilitation Act and his First, Eighth and Fourteenth Amendment rights were violated by the DOC, Horn and Beard because they denied his request for a TS memorandum to be placed in his file and circulated among DOC and SCI-LH staff. The purpose of the TS memorandum was to specifically identify the Plaintiff, explain that he has TS and the associated disorders of ADD, AHDD, OCD and PTSD, explain the symptoms of these disorders (specifically his coprolalia) and direct that he should not be subjected to punishment for exhibiting any symptoms related to his illness. These Defendants refused the Plaintiff's requests to properly train SCI-LH staff in TS and its associated disorders which purportedly resulted in Purcell being twice subjected to disciplinary actions and punishments for displaying the TS symptoms associated with the coprolalia aspect of his illness; he was disciplined on another occasion because he failed to obey an order which he allegedly did not hear because of his attention and concentration problems associated with his ADD. Furthermore, according to Purcell, the TS training which these Defendants eventually did provide to SCI-LH staff proved to be woefully inadequate; also,

factually inaccurate information was conveyed to institutional personnel. Purcell claims that even after this deficiency was documented, the Defendants refused his request that they re-train the SCI-LH staff, utilizing recognized experts in the field of TS.

The first misconduct referred to by Purcell occurred on June 17, 1999. He claims that he was manifesting verbal coprolalia and was ordered to stop using offensive language by Food Service Supervisor Myers. Purportedly, Myers initially denied the Plaintiff an opportunity to return to his cell until his symptoms subsided. A verbal confrontation then occurred between Purcell and Myers. As part of the fray, Purcell cursed at Myers. After hearings, the Plaintiff was eventually disciplined, (at Misconduct Report 950281), for this episode. Significantly, at one hearing a physician testified that TS does not cause a person to curse within the context of a conversation.

Purcell also cites to a second incident in which he alleges that he was disciplined for exhibiting symptoms of TS. That claim appears in a section of his AC labeled "Misconduct #951648 Incident." AC at ¶ 38. Purcell alleges that he was disciplined for a November 4, 1999 incident in which he reported that another inmate threatened to stab him. He also describes an argument with another inmate which evolved into a profanity-laced tirade by Purcell. That incident eventually resulted in the issuance of a misconduct charge. Purcell was disciplined in this instance for a series of threats and taunts that he directed toward the other inmate. Again, after disciplinary proceedings, it was determined that his conduct was not precipitated by TS.

Plaintiff alleges that Defendants would only permit Purcell to use DOC professional staff as medical expert witnesses during his disciplinary hearings. Because the DOC staff members were inadequately trained they provided incorrect, and allegedly intentionally false, testimony

regarding TS and its symptoms during the hearing. Because of the misleading and false testimony, Purcell claims that he was wrongly found guilty of one misconduct charge. At another misconduct hearing, the Defendants did not permit the prison psychologist to testify on Purcell's behalf (the psychologist apparently refused to testify because he was not sufficiently knowledgeable about TS and its symptoms). According to Purcell, the hearing examiner at this misconduct hearing would not allow him to present medical evidence from TS experts either by affidavit or by telephone, and due to the lack of expert testimony, he was found guilty of the misconduct despite his asserted defense that his TS was responsible for his actions.

When Purcell was initially housed in disciplinary confinement because of the second misconduct, he was not permitted to bring with him his back brace, knee braces and steel toed orthopedic boots because of orders issued by the security staff. Fifteen days after he was placed in disciplinary housing at SCI-LH, however, the Program Review Committee ordered that Purcell be given access to his back and knee braces. He was required to obtain new orthopedic boots, however, because SCI-LH staff informed him that steel toed boots were not permitted by DOC regulations, even though he had worn steel toed boots at two other DOC prisons. Seven months elapsed before he was given a new pair of orthopedic boots. Purcell claims that the inordinate delay was both intentional and retaliatory. In another incident, Purcell claims that prison personnel confiscated his back brace because the steel supports broke through the fabric and he was not provided with a new one for three months, although the damaged brace could have been repaired and used by him until he was given the new brace.

In his SC, Purcell claims that on December 11, 2000, while he was in the cafeteria two other inmates allegedly pushed a bucket into Purcell's wheelchair. This incident allegedly

resulted in a manifestation of Purcell's TS symptoms and he started to curse and yell loudly. Purcell reported the incident to Corrections Officer (CO) Davis and it was then reviewed by Corrections Officer (CO) Lt. Bolton, who conducted an investigation. Purcell then filed an informal complaint against the two inmates. He recounted several earlier incidents which involved these inmates, including one where they were housed in a cell adjacent to his and he heard them laugh at loud racist remarks being made by another occupant of the cell. Doc. no.2, Ex. Z-11 at 2-3.

On December 19, 2000, Captain Ponchione, one of the Defendants named in the SC, interviewed Purcell about the several statements that he made in the informal complaint. On December 22, 2000, Purcell received a misconduct report, No. 971174, which charged him with one count of Lying to an Employee. The charge was based upon allegations that Purcell lied about the incident with the two inmates in the dining hall, and that he lied about the incident in which he purportedly heard the racist remarks. Doc. no. 2, Ex. Z-12 (the misconduct report).

On December 28, 2000, a misconduct hearing was conducted by B. E. Ansell who found Purcell guilty and imposed a sanction of thirty days confinement in a restricted housing unit. On December 29, 2000, the Plaintiff was transferred to SCI-Somerset to begin serving his thirty day sanction because SCI-LH does not have its own regular Restrictive Housing Unit. SC at ¶ 100. SCI-Somerset is situated in close proximity to SCI-LH. At certain times SCI-LH uses empty secure rooms in the hospital building to house its inmates who have been sanctioned to disciplinary segregation. Upon arrival at SCI-Somerset, Purcell was placed in the RHU, but without access to many of his medical devices. He made many requests and filed grievances for an appropriate accommodation in an effort to access his medical devices while in the RHU at

SCI-Somerset. In response to one of these requests/grievances, Dr. Paul Noel, the medical

director at SCI-Somerset wrote:

> [y]ou are now in a Restricted Housing Unit and there are some over-riding
> security considerations.  Some of your comfort measures will not
> be provided in exactly the same manner as at SCI-Laurel
> Highlands.  Since you are confined to your cell for 23 hours that
> should not result in any great medical problem.  When outside
>
> your cell, those aides are available to you.

Doc. no. 2, Ex. Z-39.  Purcell also appealed the finding of guilt with respect to misconduct No.

971174 to the Program Review Committee (PRC) at SCI-Somerset which, on January 17, 2001,

affirmed the finding of guilt but modified the thirty day sanction in the RHU.  He was released

on the following day after serving twenty-one days.  Purcell was then returned to SCI-LH on

January 18.  He appealed from the PRC's affirmance of the misconduct finding to Rosemeyer at

SCI-LH who also affirmed the decision of B.E. Ansell.  Finally, Purcell appealed to DOC's chief

counsel, but was unsuccessful.  Rather, a review of this record shows that only the first two

misconduct reports referenced in Purcell's AC are asserted to have been based upon improper

discipline meted out because he had exhibited symptoms of his neurological disorders.

## II. Remaining Claims

There is a lot of confusion as to what claims remain pending in this action, due mostly in

part to the evolving law surrounding the ADA claims.  In order to determine what claims remain,

it is necessary to review Plaintiff's claims as set forth in his AC and SC, the disposition of these

claims in the three Report and Recommendations adopted as the Opinions of the Court (doc. nos.

36, 114 & 152), as well as my previous Memorandum Opinion (doc. no. 169).

A. Plaintiff's Claims as set forth in the AC and SC

1.  Plaintiff's claims that Defendants violated his rights as provided under 42 U.S.C.
    § 12132 of the ADA and 28 C.F.R. § 130(b)(7) by:

a.   refusing to provide Plaintiff with his ADA requested TS Memo with his
     name and inmate number and informing prison staff
     not to discipline him for manifesting involuntary
     and uncontrollable symptoms, AC, ¶ 171.A;

b.   refusing to properly train DOC and LH staff and subjecting him to
     disciplinary misconduct reports for manifesting the
     symptoms of TS, AC, ¶ 171.B;

c.   refusing to allow Plaintiff's request for accommodation by allowing him to
     present evidence of his TS as well as federal court
     findings relative to Plaintiff's disabilities as a
     defense in his misconduct proceedings, AC, ¶
     171.C;

d.   refusing to provide Plaintiff with requested mental health treatment
     services as well as his request for advocacy at
     disciplinary hearings to adequately establish that
     Plaintiff did suffer from severe TS and associated
     disorders, AC, ¶ 171.D;

e.   Defendant Beard's refusal to stop Plaintiff from being subjected to
     wrongful misconduct reports and punitive sanctions
     as evidenced by his statement that he would not
     change anything until ordered to do so by the
     courts, AC, ¶ 171.E;

f.   refusing to immediately provide Plaintiff with his medically- authorized
     back brace and knee braces in the RHU for fifteen
     days and refusing Plaintiff his medically-authorized
     steel toe boots during thirty-three days in the RHU
     as well as refusing to replace Plaintiff's orthopedic
     boots for seven months, AC, ¶ 171.F;

g.   refusing to provide Plaintiff with mental health/psychology treatment for
     his severe TS, ADD, ADHD, OCD & PTSD, AC, ¶
     171.F-1; and

h.   improperly confiscating and denying Plaintiff's medically authorized back
     brace for three months and refusing his request to
     have it immediately repaired at SCI-LH or allow
     him to keep it until it was replaced.  AC, ¶ 171.G.

2.   Plaintiff's claims that Defendants violated his rights as provided under 42 U.S.C.

§ 12203(b) of the ADA and 28 C.F.R. § 35.134(b) by:

a.  refusing to recognize and accommodate Plaintiff's ADA right to
    reasonable accommodations in the form of his
    request for a TS memo with his name and inmate
    number and specifically advising LH staff not to
    punish him for manifesting TS symptoms, AC, ¶
    173.A;

b.  refusing to acknowledge Plaintiff's reasonable ADA request not to be
    punished with misconduct reports and punitive
    disciplinary sanctions for manifesting his severe TS
    and associated disorders, AC, ¶ 173.B;

c.  transferring Plaintiff from SCI-Graterford to SCI-Laurel Highlands after
    he requested disability accommodations, AC, ¶
    173.C;

d.  refusing to acknowledge Plaintiff's reasonable ADA request to
    immediately return to his cell on 11/4/99 when he
    began to manifest his disabilities, AC, ¶ 173.D;

e.  refusing to acknowledge Plaintiff's ADA request to be allowed to put on
    his pants, hat, shoes and his back brace, knee brace
    and orthopedic boots when being taken to the RHU
    on 11/4/99 and being forced to walk a quarter mile
    without his orthopedic aids, AC, ¶ 173.E;

f.  confiscating Plaintiff's longstanding medical authorization and ADA
    granted modification of prison rules authorization
    for his steel toe orthopedic boots while he was in
    the LH RHU relative to misconduct no. 951648 in
    violation of the terms of his settlement agreement in
    Civil Action No. 95-6720, AC, ¶ 173.E-1;

g.  refusal to acknowledge Plaintiff's request to Defendant Beard and DOC to
    protect him from continued disability discrimination
    and retaliatory punishments as evidenced by
    Defendant Beard's remarks that he would not
    change anything until ordered to do so by the court,
    AC, ¶ 173.F;

h.  refusal to assist Plaintiff with Dr. Haberman to explain his TS and
    associated disorders to the hearing examiner as
    Plaintiff's defense to misconduct charges, AC, ¶

173.G;

i.     sanctioning Plaintiff with disciplinary misconducts on June 17, 1999 and
       November 4, 1999, AC, ¶ 173.H; and

j.     refusing to remove a derogatory 1995 Memo (Exhibit L, doc. no. 15) from
       Plaintiff's file wherein it implies that Plaintiff is a
       malingerer and informs staff not to allow him to use
       his TS as a defense to problems with staff, AC, ¶
       173.I.

3.   Plaintiff's claims that Defendants violated his rights as provided under 42 U.S.C.
     § 12203(a) of the ADA and 28 C.F.R. § 35.134(a) by:

     a.    transferring him to SCI-LH right before he was scheduled to go to trial in
           two separate actions wherein he alleged ADA
           violations by the DOC in an effort to separate
           Plaintiff from his inmate witness, to place Plaintiff
           further from the court and out of the jurisdiction of
           Judge Shapiro, and to remove Plaintiff from his job
           where he was making $160.00 monthly which he
           received as a settlement in a prior state court action,
           AC, ¶ 174.a-c;

     b.    failing to modify his medical clearance form, which allowed him to go to
           his single room or other quiet space to manifest his
           "physical symptoms," to add "Tourette Syndrome,
           ADD, ADHD, OCD and PTSD," and refusal to
           allow Plaintiff to go to his single room on
           November 4, 1999 when he began manifesting his
           symptoms but instead requiring him to go to a
           crowded dayroom, AC, ¶ 174.d-e;

     c.    taking adverse actions against him for filing grievances and lawsuits by:
           providing false information to the LH disciplinary
           hearing examiner which she then twice used as her
           basis for finding Plaintiff guilty and imposing
           disciplinary sanctions for manifesting his disability;
           denying Plaintiff his orthopedic boots, back brace
           and knee braces; deliberately "losing" his two
           lawsuits while packing his property; pouring tuna
           fish over his legal papers; and ordering him to ship
           his orthopedic boots home or have them destroyed
           the day after he filed his second grievance, AC, ¶
           174.f- g; and

d.  refusing to assist him in seeking the assistance of Dr. Edward Haberman, Chief Psychologist and Director of Psychological Services, in describing his TS and associated orders to the Disciplinary Hearing Examiner and in providing him with mental health treatment and therapies at LH to enable him to participate in proscriptive programs so that Plaintiff could get a favorable recommendation for pre-release. AC, ¶ 174.h-i.

4.  Plaintiff's claims that DOC violated his constitutional rights as protected under the Civil Rights Act, 42 U.S.C. § 1983. AC ¶¶ 175-180; SC ¶¶ 203-216.

5.  Plaintiff's claims that Defendants violated the Rehabilitation Act (RA) by:

a.  failing to accommodate his TS by providing him a memo instructing staff not to punish him for outbursts brought on by his condition, AC, ¶ 193.A;

b.  failing to provide "adequate" training to staff and inmates, including mental health advocacy at disciplinary hearings, AC, ¶ 193.B;

c.  removing Plaintiff from his prison job due to his manifestation of TS symptoms, AC, ¶ 193.C;

d.  refusing to remove a "derogatory" memo in his record from Superintendent at SCI Mahoney which stated that plaintiff was a malingerer and informed staff not to let him use his diagnosis of TS as a defense to any problems with staff, AC, ¶ 193.D;

e.  refusal to allow Plaintiff to keep his medically prescribed back brace or have it immediately repaired at LH or provide him with an immediate replacement on August 12, 1999 instead of confiscating it and medical consultation and delaying replacement for three months AC, ¶ 193.E;

f.  denying his back brace, knee braces and orthopedic boots for 13-15 days while in the Restricted Housing Unit in November of 1999, AC, ¶ 193.F;

g.  confiscating his steel toe orthopedic boots in November, 1999, and the ensuing delay of seven months in replacing them with boots that did not have steel toes, AC, ¶ 193.G;

h.     repeated removals of his medically-authorized and necessary aids by DOC as a long-standing and continuing series of retaliatory actions taken in response to Plaintiff's exercise of his First Amendment rights under the ADA and RA by filing grievances and lawsuits, SC, ¶ 185;

i.     transferring him to SCI-Somerset RHU where Defendants should have known that SCI-Somerset staff was not properly trained in Plaintiff's combined neurological and mental health and serious orthopedic disabilities and disorders, SC, ¶ 202(a);

j.     failing to insure that Plaintiff was provided with his orthopedic aids while he was in the SCI-Somerset RHU, SC, ¶ 202(b);

k.     failing to immediately transfer Plaintiff back to SCI-LH when they knew or should have known that SCI-Somerset would not supply him with his orthopedic aids, SC, ¶ 202(d); and

l.     allowing him to suffer severe and continuing pain through denial of his orthopedic aids, which resulted in his inability to take out of cell showers, participate in yard exercise and have his cell cleaned for 21 days while he was

in SCI-Somerset, SC, ¶ 202(e).

## B. Relief

Plaintiff seeks declaratory, injunctive and monetary relief. Specifically, Plaintiff seeks the

following injunctive relief.

1.     An order directing Defendants to develop and implement a professional training program for educating staff regarding TS. AC, ¶ 180(d).

2.     An order directing Defendants to implement a program to train DOC employees concerning the rights of inmates with disabilities to secure reasonable accommodations and modifications of prison policies. AC, ¶ 180(e).

3.     An order directing Defendants to disseminate a TS memo with Plaintiff's inmate name and number and specifying his symptomatology and informing staff not to punish Plaintiff for manifesting documented and medically accepted symptoms of his disorders. AC, ¶ 180(f).

4.    Directing Defendants to implement and develop an adequate mental health
      program at SCI-LH in which Dr. Haberman and his staff are
      properly trained to provide counseling and therapy for TS, ADD,
      ADHD, OCD and PTSD and providing Plaintiff with an
      individualized treatment plan, or, in the alternative, to order
      Defendants to transfer Plaintiff to the Philadelphia DOC
      Supervised Mental Health Group Home. AC, ¶ 180(g).

5.    An order directing Defendants to provide him with trained mental health staff to
      advocate on his behalf with respect to disciplinary proceedings.
      AC, ¶ 180(h).

6.    Order Prospective relief in the form of a permanent injunction and protective
      order requiring Defendants correct ongoing violations of Plaintiff's
      federal rights. AC, ¶ 180(i).

7.    An order directing Defendants to expunge from his record the June 17, 1999 and
      November 4, 1999 misconduct sanctions. AC, ¶ 180(j).

8.    An order directing Defendants to retroactively adjust his classification level to
      what it should have been but for the imposition of the misconducts.
      AC, ¶ 180(k).

9.    An order directing that DOC employees may not impose disciplinary sanctions
      based on an accommodation or modification granted under the
      ADA. AC, ¶ 180(l).

10.   An order directing Defendants to fully and expertly train all DOC designated
      local and central office ADA coordinators in understanding the
      ADA. AC, ¶ 180(m).

11.   An order allowing Plaintiff to communicate with other prisoners about matters
      reasonable related to this action without fear of retaliation or
      misconduct. AC, ¶ 180(n).

12.   An order directing DOC personnel to allow disabled inmates to present
      documented medical and scientific evidence in disciplinary hearings and for
      disciplinary examiners to give weight to this evidence. AC, ¶ 180(o).

13.   An order prohibiting Defendants from harassing, threatening, punishing or
      intimidating Plaintiff because he filed the present action. AC, ¶
      180(s).

14.   An order allowing Plaintiff to have pre-trial proceedings by video conference and
      allowing the use of alternative dispute resolution. AC, ¶ 180(t).

15.    An order directing Defendants to remove the 1995 derogatory Memorandum from
       his file and any other files that describe Plaintiff as a malingerer.

       AC, ¶ 180(u).

## C. ADA Claims

Originally, Plaintiff's ADA claims were dismissed in their entirety as barred by Eleventh

Amendment Immunity. See R&R, p.12 (doc. no. 36) and Order, doc. no. 40. Plaintiff's ADA

claims for injunctive relief were reinstated as a result of the subsequent opinion in Koslow v.

Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002), cert. denied, 537 U.S. 1232 (2003), which

recognized that the grant of sovereign immunity in the Eleventh Amendment did not apply to

claims for injunctive relief under the ADA. R&R, p.31 (doc. no. 114), adopted as the Opinion of

the Court. (Doc. no. 126). Thus, as of May 28, 2003, Plaintiff's claims for injunctive relief

under the ADA were reinstated as claims in this action.

This Court further notes that the Supreme Court recently held that, in Title II of the ADA,

Congress validly abrogated state soveriegn immunity by authorizing private suits for damages

and held that a prisoner may sue the state for money damages under Title II of the ADA. See

United States v. Georgia, 126 S. Ct. 877 (2006). Plaintiff's claims previously were dismissed on

the basis of sovereign immunity. The Supreme Court now has clarified that sovereign immunity

does not apply to bar Plaintiff's Title II ADA claims for money damages that assert constitutional

violations and possibly claims that do not allege constitutional violations. See Georgia, 126 S.

Ct. at 882.

Thus, the "law of the case" as of May 28, 2003 reinstated Plaintiff's ADA claims for

injunctive relief only. The law of the case doctrine does not restrict a court's power but rather

governs its exercise of discretion. Public Interest Research Group of New Jersey, Inc. v.

Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997) . The doctrine does not preclude reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. Id. at 116-17. Moreover, the efficiency concerns that underlie the doctrine do not support its application in cases where the original ruling is clearly erroneous. See Virgin Atlantic Airways v. National Mediation Board, 956 F.2d 1245, 1255 (2d Cir. 1992), citing 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4478 at 790.

Because the relevant law no longer provides a basis for dismissing Plaintiff's ADA claims, except to the extent that such claims were addressed on the merits under the RA (discussed infra), all of the Plaintiff's ADA claims remain pending in this action.[3]

## D. Claims under 42 U.S.C. § 1983

It appears from the relevant documents, as well as Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (doc. no. 178) that Plaintiff is not asserting the viability of any remaining claims asserted under 42 U.S.C. § 1983. Consequently, the Court need not address any claims Plaintiff previously asserted under 42 U.S.C. § 1983.

## E. Rehabilitation Act Claims

In the Court's previous Orders, the only claim addressed on the merits was Plaintiff's assertion that the DOC has failed to make reasonable accommodations for his neurological disabilities by failing to properly train personnel at SCI-LH. This Court granted summary judgment to Defendants as to Purcell's "failure to train" claim in a prior Memorandum Order which adopted the January 26, 2004 Report and Recommendation as the opinion of the District

Court. As noted by the Court previously, Plaintiff's RA claims that have not been addressed on the merits remain pending in this action. See R&R pp. 10-11 (doc. no. 152) (denying Plaintiff's motion to reinstate RA claims in AC not ruled upon as moot because they have never been ruled upon), adopted as Opinion of the Court (doc. no. 158) and Memorandum Order, pp.19-21 (doc. no. 169) (recognizing that Plaintiff's RA claims in SC remain pending). The RA claims addressed by the Defendants in their Motion for Summary Judgment will be discussed below.

## III. Defendants' Motion for Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corporation v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set out ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Stated somewhat differently, "[w]here the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. If a court, having reviewed the

evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is

not significantly probative", then summary judgment may be granted. Anderson, at 249-50.

The Defendants moved for summary judgment with respect to the following claims.[4]

## A. ADA Claims

Plaintiff asserts claims under Title II and Title V of the ADA. Title II of the ADA

provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title

II of the ADA applies to services, programs and activities provided within correctional

institutions. See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). Regulations

promulgated by the United States Attorney General require that public entities take certain

pro-active measures to avoid the discrimination proscribed by Title II. Chisolm v. McManimon,

275 F.3d 315, 324 (3d Cir. 2001) (citing 28 C.F.R. §§ 35.101 et seq. (1991)).

Defendants moved for Summary Judgment only as to Plaintiff's ADA claim concerning

his request for a Memorandum specifically identifying his name, inmate number, identifying his

other disorders including ADD, ADHD and OCD, and informing DOC employees not to punish

him for exhibiting his TS symptoms. Plaintiff contends that Defendants' refusal to provide him

with such a Memorandum violated his rights as set forth in 28 C.F.R. § 35.130(b)(7), which

provides as follows.

> (7) A public entity shall make reasonable modifications in policies, practices, or
> procedures when the modifications are necessary to avoid
> discrimination on the basis of disability, unless the public entity
> can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

Defendants correctly assert that Plaintiff must demonstrate that adding the specific language he requested is a reasonable modification and that Defendants can nonetheless establish compliance with the ADA by demonstrating that the modification would fundamentally alter the nature of incarceration. Prison officials may determine the reasonableness of the accommodation request in consideration of other penological needs in the prison setting, such as security, safety and administrative exigencies.

Attached to his original complaint is a memo to all correctional officers and prison personnel at the Philadelphia Detention Center that specifically identifies Purcell by name and inmate number informing them of his diseases and their associated symptoms. Also attached is a similar Memorandum from the Riverfront State Prison. Ex. B, doc. no. 2. As two prison facilities have provided Plaintiff with a memorandum identifying him by name and inmate number, it appears that there is a question of fact as to whether his requested modification is " reasonable" under the ADA.

Moreover, Defendants have not established that providing Plaintiff with the requested memorandum would fundamentally alter the nature of incarceration. While their concern for prison security certainly is legitimate, their claim that issuance of the requested memorandum would amount to a "free pass ... permitting Plaintiff to engage in misconduct and disobedience at will under the guise of TS" has no evidentiary support in the record. It simply is a bald, unsupported allegation without any evidentiary basis. Cf. Banks v. Beard, 399 F.3d 134, 141 (3d Cir. 2005) (while agreeing that deterrence of future infractions of prison rules was a legitimate

penological concern, the court noted that DOC had not submitted any evidence in support of
their assertion). Thus, there is a question of fact regarding whether issuance of the requested
memorandum would fundamentally alter Plaintiff's incarceration to the extent alleged by
Defendants. See also Chisolm v. McManimon 275 F.3d 315, 327 (3d Cir. 2001) (noting that the
prison's repetition of the word "security" in its brief and in the warden's deposition were not
supported by any showing that security was in fact implicated in its decision denying the inmate'
s request).

Moreover, the Court declines Defendants' suggestion to specifically apply the Turner test
to Plaintiff's ADA claims. In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court held that
"when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it
is reasonably related to legitimate penological interests." Id. at 89. The court then listed four
factors to consider in determining the reasonableness of a regulation: 1) whether there is a
rational connection between the regulation and the government interest; 2) whether there are
alternative means available to the prisoner of exercising the affected right; 3) the impact
accommodation of the constitutional right will have on guards and other inmates; and 4) that the
absence of ready alternatives is evidence of a regulation's reasonableness. Id. at 89-91.

As noted by Defendants, the Court of Appeals for the Third Circuit has not decided
whether the reasonableness test in Turner applies where a prisoner asserts statutory, as opposed
to constitutional, violations. See Yeskey v. Penna. Dept. of Corrections, 118 F.3d 168, 174-75 &
n. 8 (3d Cir. 1997) (declining to decide "the controversial and difficult question" of whether the
Turner standard for judicial deference should be applied to statutory as well as constitutional
claims), aff'd. on other grounds, 524 U.S. 206 (1998). Only the Ninth Circuit specifically has

held that the Turner standard applies to statutory rights such as those created by the ADA. See

Gates v. Rowland, 39 F.3d 1439 (9th Cir. 1994). Other circuits have determined that prison

officials may determine the reasonableness of the accommodation request in consideration of

other penological needs in the prison setting, such as security, safety and administrative

exigencies. See, e.g., Miller v. King, 384 F.3d 1248, 1266 (11th Cir. 2004) (noting that courts

must be mindful of the necessary balance between the ADA's goal of integration and a prison's

unique need for security, safety, and other penological concerns); Love v. Westville Correctional

Center, 103 F.3d 558, 561 (7th Cir. 1996) (same).

I agree that prison officials may determine the reasonableness of an accommodation

request under the ADA in consideration of other penological needs in the prison setting, such as

security, safety and administrative exigencies. Thus, the Court need not specifically apply

Turner as its considerations already are a part of the ADA analysis. As stated above, there

remains a question of fact as to whether the issuance of the requested memorandum is a

reasonable accommodation in light of the prison's legitimate security concerns. Consequently,

Defendants are not entitled to summary judgment as to this claim.[5]

## B. June 17, 1999 and November 4, 1999 Disciplinary Actions

In their Motion for Summary Judgment, Defendants addressed the Plaintiff's claims

regarding the above-mentioned disciplinary actions solely on the basis of Eighth Amendment

violations, notwithstanding the fact that Plaintiff raised these claims as ADA claims in his AC

and the Report and Recommendation specifically noted that Plaintiff raised these claims as

ADA/RA claims.

> The Plaintiff has, however, identified two claims of improper misconducts
> which are not specifically addressed by the DOC; *i.e.*, the June 17,

and November 4, 1999 incidents and the resulting disciplinary
proceedings. The Court of Appeals for the Third Circuit has held
that the provisions of the ADA and Rehabilitation Acts which
prohibit the exclusion of disabled persons from government
services, programs, and activities is applicable to state prisons. *See*
Yeskey v. Pennsylvania Department of Corrections, 118 F.3d 168
(3d Cir.1997), aff'd, 524 U.S. 206, 118 S. Ct. 1952, 141 L. Ed.2d
215 (1998). A cause of action under the Rehabilitation Act or the
ADA requires proof, inter alia, that the claimed discrimination
occurred as a result of the prisoner's disability. Id.

Here, Purcell was disciplined for actions which arose from the June 17 and
November 4, 1999 incidents. He asserts that the disciplinary action
to which he was subjected was a response to his Tourette
Syndrome's manifestation symptoms. The record, however,
reflects that the punishments were meted out as a result of a
finding that Purcell had engaged in activities which were not
caused by his neurological condition. The court, however, is not in
a position to rule on the continued viability of Purcell's claims
since no motion has been made with respect to these two alleged

incidents of improper punishment.

R&R, pp. 15-16 (doc. no. 152).

The language above reveals that Defendants certainly were on notice that Plaintiff raised

these claims as ADA/RA claims. Their failure to address them as such in their Motion for

Summary Judgment requires this court to deny their motion as to those claims.

## C. Rehabilitation Act Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's following RA

claims pertaining to a period of confinement in the RHU at SCI-Somerset as a result of

misconduct no. 971174.

1.   Plaintiff's claim that the SCI-Somerset staff were [sic] not properly trained to
     handle Plaintiff's disabilities;

2.   Plaintiff's claim that he was denied orthopedic aides at SCI- Somerset; and

3.   Plaintiff's claim that the DOC Defendants refused to transfer him back to SCI-LH

upon request.

Brief in Support of DOC Defendants' Motion for Summary Judgment, doc. no.174 at pp. 32-36.

The Rehabilitation Act (RA), codified in various sections of Title 29 of the United States Code, provides that a qualified disabled person shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794 (a). The RA defines an "individual with a disability" as a person that has a " physical or mental impairment, which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In order to state a claim under the RA, Plaintiff must allege that 1) he is disabled, 2) that he was "otherwise qualified" for the benefit sought or for participation in the program or that Plaintiff would be qualified if the defendant made reasonable modifications to the program; 3) that he was excluded from participation in, denied the benefit of, or subject to discrimination "solely by reason of" his disability; and 4) that the "program or activity receives federal financial assistance". 29 U.S.C. § 794(a). See Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995).

Here, it is undisputed that the Plaintiff is disabled and that the RA is applicable to facilities run by the DOC including SCI-Somerset and SCI-LH. See Yeskey v. PA Dept. Of Corrections, 118 F.3d 168 (3d Cir. 1997), aff'd., 524 U.S. 206 (1998).

As to the first claim, Plaintiff Purcell, in his responsive brief at doc. no.178, "has decided to abandon/dismiss/withdraw" the first RA claim "and only argue against DOC's arguments" relating to the second and third RA claims. (Brief in Opposition to Defendant Doc's Motion for

Summary Judgment, doc. no.178 at p. 80.) Consequently, summary judgment as to Plaintiff's

first RA claim that the SCI-Somerset staff was not properly trained to handle Plaintiff's

disabilities will be granted.

As to Plaintiff's second RA claim that he was denied orthopedic aides at SCI-Somerset,

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to

establish that the alleged denial of these orthopedic aides "had anything to do with his

disabilities." Brief in Support of DOC Defendants' Motion for Summary Judgment, doc. no.174

at p. 34. Instead, Defendants argue that Plaintiff's own exhibit demonstrates that Plaintiff's

orthopedic aides were not furnished to him in the RHU because of security considerations citing

Plaintiff's Exhibit Z-39. Defendants contend that, in this exhibit, Dr. Paul Noel, responding to

Plaintiff's requests in his capacity as DOC official and as a "physician well aware of Plaintiff's

medical needs," states as follows:

> You are now in a Restricted Housing Unit and there are some over- riding
> security considerations. Some of your comfort measures will not
> be provided in exactly the same manner as at SCI-Laurel
> Highlands. Since you are confined to your cell for 23 hours that
> should not result in any great medical problem. When outside
>
> your cell, those aides are available to you.

Brief in Support of DOC Defendants' Motion for Summary Judgment, doc. no.174 at pp. 34-35

(quoting Plaintiff's Exhibit Z-39). Defendants argue that "'in the absence of substantial evidence

in the record to indicate that [prison] officials have exaggerated their response to these [security]

considerations, courts should ordinarily defer to their expert judgment in such matters.'" Brief in

Support of DOC Defendants' Motion for Summary Judgment, doc. no.174 at pp. 34-35.

In his 115-page responsive Brief, Plaintiff argues, inter alia, that Defendants do not

address, nor does Dr. Noel respond to, Plaintiff's requests for the various medical allowances

provided to him apart from his orthopedic aides including the allowance to sit at prison counts; the allowance to be handcuffed with hands in front due to pin in left shoulder, medical restrictions prohibiting lifting, twisting, pushing, pulling, standing in long lines, prolonged standing or walking; medical allowances for Plaintiff's food tray to be placed on table by inmate kitchen workers, and for inmate block workers to clean his cell; and medical authorization to use the handicap toilet and handicap wheelchair showers. Brief in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at pp. 98-99, 85. Plaintiff further argues that at no time did Dr. Noel respond to Plaintiff's pleas for help with Plaintiff's extreme pain while housed in the RHU at SCI-Somerset. Brief in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at pp. 98-99. Plaintiff contends that there is a genuine issue of fact as to whether Defendants failed to make reasonable accommodations for Plaintiff's severe orthopedic disabilities for the 21 days that he was in the RHU at SCI-Somerset. Brief in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at pp. 105-06. He further argues that the Turner analysis does not apply to his statutory RA. claims. Brief in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at p. 104.

This Court must deny Defendants' Motion for Summary Judgment as to the second RA claim as Defendants' failure to address those aspects of the RA claim pertaining to Plaintiff's many medical allowances that were not granted to him in the RHU at SCI-Somerset demonstrates the existence of disputed issues of material fact relative to the second RA claim.

As to Plaintiff's third RA claim that the DOC refused to transfer Plaintiff back to SCI-LH upon his request, Defendants argue that the United States Constitution and Pennsylvania state law do not provide a right for a convicted prisoner to be placed in any particular institution.

Brief in Support of DOC Defendants' Motion for Summary Judgment, doc. no.174 at pp. 35-36

(citing Meachum v. Fano, 427 U.S. 215, 224 (1976) and 37 Pa. C.S. § 93.11(a)). Plaintiff

responds that the DOC failed to reasonably accommodate him by failing to timely transfer him

back to SCI-LH when it knew that it could not or would not be able to accommodate his

disability needs at SCI-Somerset as requested under the RA to prevent his continued pain and

suffering.

Defendants' arguments fail to specifically address Plaintiff's federal statutory rights under

the RA. Consequently, disputed issues of material fact exist as to whether Plaintiff's request for

transfer back to SCI-LH was a reasonable accommodation of his disabilities under the RA, and

summary judgement on this issue will be denied.

Finally, in his responsive brief, Plaintiff notes that the DOC has not moved for summary

judgment with regard to four remaining, and viable RA claims contained in Plaintiff's AC. Brief

in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at 6-7, 112-13.

These four claims are as follows:
1. Removing Plaintiff from prison job due to /interference with ADA/RA granted job disability accommodations. AC, ¶ 193(C).

2. Removal of back brace (3 months)/interference with ADA/RA granted disability accommodations. AC ¶ 193(E).

3. Refusal/denial of back brace/knee braces on November 4th, 1999 for 13-15 days. AC ¶ 193(F).

4. DOC's removal/refusal to return medically authorized orthopedic boots and failure to replace such to Plaintiff at SCI-LH for 7 months. AC ¶

193 (G).

Brief in Opposition to Defendant Doc's Motion for Summary Judgment, doc. no.178 at pp. 6-7.[6]

In the absence of a motion by Defendant addressing these claims, the above four claims

from Plaintiff's AC remain, and summary judgment as to these four claims is inappropriate.  An

appropriate order follows.

March 31, 2006

Kim R. Gibson
United States District Judge

cc:     Lisa Pupo Lenihan
        United States Magistrate Judge

        Timothy Purcell, AS-2217
        SCI - Laurel Highlands
        5706 Glades Pike
        P.O. Box 631
        Somerset, PA 15501-0631

        Kemal Alexander Mericli
        Senior Deputy Attorney General
        Office of the Attorney General
        6th Floor, Manor Complex
        564 Forbes Ave.,
        Pittsburgh, PA 15219

        Richard S. Dorfzaun
        Dickie, McCamey & Chilcote, P.C.
        Two PPG Place
        Suite 400
        Pittsburgh, PA 15222-5402